# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SUSAN LLOYD, | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 20-CV-4070 |
| | : | |
| HILTON GARDEN INN, *et al.*, | : | |
|     Defendants. | : | |

## MEMORANDUM OPINION

**Schmehl, J. /s/ JLS**                                                                                                                        June 1, 2021

Before the Court is three Motions to Dismiss, and a Motion for Leave to file a Second Amended Complaint. After a review of the motions and responses thereto, the case shall proceed with one count of disability discrimination case under Title III of the ADA in which plaintiff may seek injunctive relief. Accordingly, plaintiff may now file a Second Amended Complaint against the "Hilton defendants" for this count, and all other counts and parties are dismissed for the reasons set out below

I. **Procedural Posture**

Before the Court is defendant Osmose's Motion to Dismiss, defendants Hilton Garden, Eagleview, and David Hirsch's (the "Hilton defendants") Motion to Dismiss, non-parties Post and Schell, P.C. and Charles Spitz's Motion to Dismiss, and plaintiff Susan Lloyd's Motion for Leave to File a Second Amended Complaint. Lloyd responded to the three Motions to Dismiss, and all defendants and the non-parties responded to Lloyd's Motion for Leave to File a Second Amended Complaint.

Lloyd argues that she should be permitted to file a Second Amended Complaint to clarify her positions, and then all the Motions to Dismiss should be rendered moot. She has done this once before. After receiving Motions to Dismiss on her original complaint, she filed a First

Amended Complaint to add facts and legal conclusions that directly responded to the Motions to Dismiss, thereby rendering the motions moot. She wishes to do that again.

Her proposed Second Amended Complaint ("SAC") is over fifty pages long, it pads additional facts onto her First Amended Complaint, adds legal citations, legal conclusions, analogizes caselaw, and directly responds to arguments made in defendants' Motions to Dismiss. Defendants argue that permitting the SAC would be futile given that the amendment would change nothing of substance, and would require defendants to brief another Motion to Dismiss and they have already had to deal with over fifteen motions in which nearly all were without merit. (*See* ECF #96, *Court Order*.) Defendants are correct. Permitting Lloyd to file a SAC would be futile given her numerous filings, and with an understanding of what she seeks to add in her SAC.

Accordingly, as Lloyd writes in her SAC, a policy in federal court is to permit amendments so that cases may be decided on the merits rather than procedural technicalities. Given that principle, an understanding of the changes that Lloyd seeks to add with her SAC, the procedural posture of the case, and acknowledging that Lloyd is proceeding pro se, I will address the defendants' Motions to Dismiss in light of both plaintiff's FAC and proposed SAC. I will draw all reasonable inferences in favor of plaintiff and her claims from both complaints given that she is proceeding pro se.[1]

II. **<u>Relevant Factual Background</u>**

In her First Amended Complaint and proposed Second Amended Complaint, along with numerous other filings, plaintiff Susan Lloyd alleges the following. Lloyd has been "disabled since 2006 with multiple problems including severe heart and respiratory medical problems." (ECF #74, Proposed Second Amended Complaint, at 8.) Defendant Hilton Garden Inn is a hotel

in Exton, Pennsylvania, where the events of this case took place. Defendant Eagleview Crossing Hotel LP is the owner and operator of the hotel. Defendant David Hirsch is the manager of the hotel. Lastly, defendant Osmose Utilities Services Inc. is an electric utility services company whose employees were staying at the hotel during the event of the case.

Lloyd pleads three issues. First, her hotel neighbors, the Osmose employees, were disorderly, harassed her, were staying in a handicap accessible room but were not handicapped, therefore, they deprived her of the full rights of her stay. Second, the hotel refused to move the Osmose employees to a different hotel room thereby discriminating against Lloyd. Third, the hotel has ADA deficiencies in the parking lot and other premises which caused Lloyd harm.

Due to poor credit, Lloyd has been unable to obtain an apartment or a home so she has been staying at hotels and decided to stay at the Hilton Garden Inn. (*Id.* at 10.) Lloyd complains that her neighbors in the hotel, the Osmose employees, were "slamming doors," "smoking marijuana," "yelling and screaming," "smoking cigarettes and drinking alcohol in public areas of the hotel," amongst other things. (*Id.* at 11-12.) When Lloyd confronted them about their behavior one of them told Lloyd "she is tripping," and they began "to harass Lloyd and even stand outside Lloyds window smoking, drinking and harassing Lloyd to intimidate Lloyd." (*Id.* at 12.) Lloyd continued to try to get them to settle down, but this only increased the tension and the number of disturbances. (*See id.* at 12-29.)

Lloyd asked the hotel on multiple occasions to move the Osmose employees into a different room because they were disturbing her and they were in handicap accessible rooms but, according to Lloyd, were not in-fact handicapped. (*Id.* at 13.) The hotel declined Lloyd's request to move the Osmose employees. Although Lloyd states that the hotel "refused to do anything," they offered to move her to a different handicap accessible room. (*Id.* at 15.) Lloyd declined and

3

was appalled that the hotel would not move the Osmose employees. (*See id.* at 15-16.) Lloyd now complains that the hotel discriminated against her by not moving the Osmose employees because she is a Caucasian female. (*Id.* at 55-56.)

Ultimately, the hotel asked Lloyd to leave the hotel in the following email: "We respect that you dislike the employees of the Osmose Company and rather than continue this interpersonal dispute with them, we believe that it is in all parties best interest and for your own happiness to seek accommodations elsewhere, as we are also no longer wish for you to continue to attempt to involve either our employees or other hotel guests in this interpersonal dispute with these Osmose employees." (*Id.* at 19.). Lloyd characterizes this email by writing: "The hotel is attempting to throw Lloyd out because they do not wish to deal with Lloyds legitimate complaints." (*Id.* at 23.) Lloyd moved out and was "able to find a hotel within reasonable distance that would match the 60.00 a night rate." (*Id.* at 35.)

Lloyd's third issue is that the hotel has handicap accessibility deficiencies in violation of Title III of the ADA. During the dispute with the hotel about the Osmose employees, Lloyd "found out she was not in an ADA compliant room even though she is disabled with a mobility scooter." (*Id.* at 13.) She was "unable to access the bathroom in her room with her mobility scooter." (*Id.*) Additionally, the hotel handicap parking lot is further away from the building than the regular parking spaces, and there is not a sufficient amount of handicap spaces. (*Id.* at 14.) This causes handicap persons, like herself, to "go directly behind other vehicle (who could run you over) as there is no accessible sidewalks . . . . Then you have to go across the parking lot . . . go all around a very dangerous curve (another safety hazard) to get to the front of the building as the back has zero accessible entryways." (*Id.*) Thus, Lloyd "was greatly affected by the parking lot ADA violations as she had to ride her mobility scooter around cars and around a very

dangerous curve in which to access the building." (*Id.* at 41.) The deficiencies caused her "great neck and back pain" and "led [her] to develop anxiety about riding her mobility scooter at the hotel." (*Id.*)

Also in her SAC, Lloyd directly responds to the standing arguments set out in the pending Motions to Dismiss. (*See id.* at 38-40.) She states that she would still be living at the hotel if not for the defendants' actions, she has a high probability of returning since she lives within ten miles of the hotel, frequently travels in the area, has many friends in the area, and has been a "Hilton Honors" member for over twenty years. (*Id.* at 40.) Therefore, given her injuries and likelihood of returning, if the alleged ADA violations are not remedied, she will be harmed. (*Id.*)

III. **Analysis**

1. No Claims Exist Against Post and Schell, and Charles Spitz

Non-parties Post and Schell, P.C. and Charles Spitz Motion to Dismiss themselves from the case, and Lloyd's position in response is unclear. Plaintiff states that these parties defamed her, but she did not include them as parties in any of her complaints. Nonetheless, their Motion to Dismiss is granted because plaintiff admittedly intended to not include these parties and she has not put forth any valid claims of defamation against them as a matter of law. (*See* ECF #96, *Court Order.*)

2. Disability Discrimination Under Title III of the ADA.

Defendants argue that Lloyd lacks standing to bring a Title III claim under Rule 12(b)(1), and alternatively, that her Title III claim is insufficient as a matter of law under Rule 12(b)(6). Lloyd's Title III claim is based on alleged ADA accessibility deficiencies at the hotel.

    a. *Lloyd has Standing to Bring a Title III Claim.*

Article III standing exists when a plaintiff adequately establishes: (1) an injury in fact (*i.e.,* a "concrete and particularized" invasion of a "legally protected interest"); (2) causation (*i.e.,* a "fairly traceable" connection between the alleged injury in fact and the alleged conduct of the defendant); and (3) redressability (*i.e.,* it is "likely" and not "merely speculative" that the plaintiff's injury will be remedied by the relief plaintiff seeks in bringing suit). *Common Cause of Pennsylvania v. Pennsylvania*, 558 F.3d 249, 258 (cleaned up).

Under Title III of the ADA, injunctive relief is the only remedy available. *Hollinger v. Reading Health Sys.*, 2017 U.S. Dist LEXIS 12871, *9 (E.D. Pa. Jan. 31, 2017). Provided this remedy, courts are instructed to "look beyond the alleged past violation and consider the possibility of future violations." *Id.* (citation omitted). Lloyd argues in her SAC that the "intent to return method" establishes that she has standing. (ECF #74, 38-40.)

Under the intent to return method, a plaintiff can show a real and immediate threat of future injury, and thereby satisfy the first *Lujan* prong, by demonstrating their intent to return to the place where the discrimination occurred. *Hollinger*, 2017 U.S. Dist LEXIS 12871, at *9-10. To do so, the plaintiff should show "(1) the past discriminatory conduct violates the ADA; (2) it is reasonable to infer from the allegations that the discriminatory conduct will continue; and (3) it is reasonable to infer based on past patronage, proximity of the place to the plaintiff's home, business connections, and personal connections to the area, that the plaintiff intends to return to the place in the future." *Id.* at *10.

The Hilton defendants only cite to *Gill* for the proposition that Lloyd lacks standing, and they do not argue against the veracity of Lloyd's facts regarding standing. In *Gill*, the plaintiff "expresse[d] no intent to return," and failed to provide "any description of concrete plans." *Gill v. Abington Mem'l Hosp.*, 2019 U.S. Dist. LEXIS 10336, at *10 (E.D. Pa. Jan. 23, 2018).

Whereas Lloyd pleads that she would still be living at the hotel if not for the defendants' actions, has a high probability of returning since she lives within ten miles of the hotel, frequently travels in the area, has many friends in the area, and has been a "Hilton Honors" member for over twenty years. (ECF #74, at 40.)

Given Lloyd's injuries and likelihood of returning, if the ADA violations are not remedied, she states that she will be subjected to a real and immediate threat of future injury. (*Id.*) Again, defendants do not contest the veracity of these facts, defendants only argue that her SAC which brings forth her standing arguments is futile. However, her amendment establishes that she has standing to bring a Title III claim, and as explained below, her Title III claim has merit so defendant's futility argument is rejected.

      b. *Lloyd's Title III Claim is Sufficient.*

Title III of the ADA prohibits discrimination "on the basis of disability in the full and equal enjoyment of . . . accommodations of any place of public accommodation . . . ." 42 U.S.C. § 12182(a). To state a claim of disability discrimination under Title III of the ADA, a plaintiff must show (1) discrimination on the basis of a disability; (2) in the full and equal enjoyment of goods, services, facilities, privileges, advantages or accommodations of any place of public accommodation; (3) by the public accommodation's owner, lessor or operator." *Mizic v. Pacious*, 2017 U.S. Dist. LEXIS 191949, *11 (E.D. Pa. Nov. 20, 2017) (citations omitted).

For example, in *Harty v. Burlington*, the plaintiff was paralyzed from the waist down, and encountered various architectural barriers that were not ADA compliant at a clothing store. 2011 U.S. Dist. LEXIS 64228, *2-4 (E.D. Pa. June 16, 2011). The court found the allegations sufficient as a matter of law because the plaintiff alleged "disabled parking spaces that were too narrow, non-level spaces and aisles, a missing grab bar in the restroom, a misplaced sink in the

restroom, a prohibitively high hand dryer in the restroom, and overcrowded merchandise aisles." *Id.* at *30.

Lloyd complains that the hotel had numerous architectural barriers that caused her harm. She complains that the she was "unable to access the bathroom in her room with her mobility scooter." (*Id.*) The hotel's handicap parking spaces are further away from the building than the regular parking spaces, and the hotel does not have a sufficient amount of handicap spaces. (*Id.*) This causes handicap persons, like herself, to "go directly behind other vehicle (wo could run you over) as there is no accessible sidewalks . . . . Then you have to go across the parking lot . . . go all around a very dangerous curve (another safety hazard) to get to the front of the building as the back has zero accessible entryways." (*Id.*) Lloyd's SAC alleges cognizable violations of Title III of the ADA against the Hilton defendants, but no claims exist against the Osmose defendants who are not the owner, operator, or lessor of the hotel.

3. Lloyd's Title V Claim is Dismissed.

Title V is the anti-retaliation provision of the ADA which requires that a defendant took an adverse action against a plaintiff at least in part because the plaintiff engaged in protected conduct under the ADA. *Heffley v. Steele*, 2019 U.S. Dist. Lexis 177026, at *14, FN10 (W.D. Pa. Oct. 11, 2019). Lloyd pleads that defendants violated Title V by forcing her to leave the hotel under threat of arrest if she refused to comply. (ECF #74, at 44.) She does not plead that she was kicked out of the hotel because she engaged in any protected conduct under the ADA, nor can she plead anything of that sort. The hotel offered her a different room that was handicap accessible. Lloyd declined. Then when Lloyd continued to complain, the hotel believed, as they wrote in their email to Lloyd, that it was in the best interest of all parties for her to no longer stay

at the hotel. The hotel asking Lloyd to leave had nothing to do with Lloyd acting under the ADA nor her disabilities, therefore, Lloyd's Title V claim is dismissed.

4. Lloyd's Section 504 of the 1973 Rehabilitation Act Claim is Dismissed.

Section 504 of the Rehabilitation Act states: "No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . . 29 U.S.C. section 794(a). To establish a violation of Section 504, a plaintiff must prove that (1) he or she is handicapped under the Act; (2) qualified for the program of benefits from which he or she had been excluded; (3) the program receives federal financial assistance; and (4) he or she was precluded from participating in the program because of their handicap. *Sullivan v. Pittsburgh*, 811 F.2d 171, 181-82 (3d Cir. 1987).

Lloyd pleads that the hotel received or should have received federal financial assistance through the CARES Act, thus, it falls within section 504 of the Rehabilitation Act. Next, she was "qualified to stay at the property" but was "excluded the usage of the property due to her disability." (ECF #74 at 45-46.) Lloyd does not exactly plead the programs, activities, or services that she was excluded from or denied the benefits from based upon her disability. Nevertheless, as described in the previous section, the hotel offered Lloyd a new handicap accessible room given her complaints about the Osmose employees. She declined. After she continued to complain further, the hotel asked her to leave the hotel. Lloyd fails to plead that she was asked to leave because of her disability, therefore, her Rehabilitation Act claim is dismissed.

5. Lloyd's NIED and IIED Claims are Dismissed.

Lloyd claims she suffers from negligent infliction of emotional distress (NIED) and intentional infliction of emotional distress (IIED) because the Hilton defendants "allowed Osmose employees to continue to harass Lloyd, stand directly outside Lloyds window and harass Lloyd and also to continue to violate the Hotel Rules in regards to the smoke free policies and the noise regulations to not disturb other guests." (ECF #74, at 50.)

Under Pennsylvania law, to prove a NIED claim when the defendant had a contractual or fiduciary duty toward the plaintiff, the plaintiff must prove (1) the defendant owed a duty of care to the plaintiff; (2) the defendant breached that duty; (3) the breach resulted in injury to the plaintiff; and (4) the plaintiff suffered an actual loss or damage. *Wilder v. United States*, 230 F. Supp. 2d 648, 653-54 (E.D. Pa. 2002). The Pennsylvania Supreme Court explained that "NIED is not available in garden-variety 'breach of contractual or fiduciary duty' cases, but only in those cases where there exists a special relationship where it is foreseeable that a breach of the relevant duty would result in emotional harm so extreme that a reasonable person should not be expected to endure the resulting distress." *Toney v. Chester Cnty. Hosp.*, 614 Pa. 98, 100 (2011). Therefore, NIED in this scenario is limited "to preexisting relationships involving duties that obviously and objectively hold the potential of deep emotional harm in the event of beach. *Id.* at 117.

Lloyd's NIED claim is insufficient because Osmose did not breach any duty owed to Lloyd, and the Hilton defendants' actions did not have potential to cause deep emotional harm as required under Pennsylvania law. Lloyd claims that the Osmose employees harassed her, Hilton failed to move them or ensure that they complied with hotel rules, and Hilton kicked her out of the hotel. While the Hilton defendants could arguably be said to have owed Lloyd the duty of ensuring that other guests follow the rules, their lack of enforcement or the Osmose employees

10

breaking rules nonetheless could not have foreseeably caused deep emotional harm to Lloyd. *Toney*, 614 Pa. at 117. A NIED claim requires extreme conduct and foreseeability that such conduct would cause deep emotional harm, which this does not.

Under Pennsylvania law, to prove an IIED claim a plaintiff must show (1) extreme and outrageous conduct; (2) the conduct was intentional or reckless; (3) the conduct caused emotional distress; and (4) the plaintiff's distress is severe. *Doe v. Trustees of the Univ. of Pennsylvania*, 270 F. Supp. 3d 799, 826-27 (E.D. Pa. 2017) (cleaned up). "[D]iscrimination alone does not meet the extreme and outrageous standard," the conduct must be "the most clearly desperate and ultra extreme conduct." *Id.* at 827 (citations omitted). Further, it is for the court to "determine initially whether the conduct in issue can be regarded as so extreme and outrageous so at to permit recovery." *Harris v. Dollar Gen. Corp.*, 2016 U.S. Dist. LEXIS 137942, *15 (E.D. Pa. Oct. 3, 2016).

Lloyd's IIED claim is based on the same facts as her NIED claim and fails for the same reasons. The Osmose employees' conduct and the Hilton defendants' actions were not "extreme and outrageous." Osmose employees were allegedly being disruptive in the hotel hallways, and the Hilton defendants failed to stop them. This simply cannot support an IIED claim.

6. <u>Lloyd's Discrimination Claim Under 42 U.S.C. Section 1981 is Dismissed.</u>

Lloyd's discrimination claim under 42 U.S.C. section 1981 is based on the Hilton defendants' actions of not moving the Osmose employees to a different hotel room after Lloyd made such a request. Since they did not move the Osmose employees, Lloyd complains that she was discriminated against for being a Caucasian female. (ECF #74, Lloyd's Proposed SAC, at 55-56.) ("The Osmose Employees who harassed Lloyd are African American males. Lloyd is Caucasian female.")

Under 42 U.S.C. section 1981, a plaintiff must show that a defendant intentionally discriminated against him or her "because of race" in a contractual relationship. *Katchur v. Thomas Jefferson Univ.*, 354 F. Supp. 3d 655, 668 (E.D. Pa. 2019) (cleaned up). A plaintiff must show that he or she "was deprived of a protected right and then establish causation." *Comcast Corp. v. Nat'l Assoc. of African American-Owned Media*, 140 S.Ct. 1009, 1018 (2020).

There is no suggestion of racial discrimination in Lloyd's pleadings. Lloyd had no right to have the Osmose employees moved, nor was any part of Lloyd's and the hotel's contractual relationship violated when the hotel chose to not move the Osmose employees to a different hotel room. Lloyd cannot maintain this claim simply because she pleads that she is a Caucasian woman, the Osmose employees are African American, and no further evidence. Lloyd's section 1981 claim is dismissed.

7. <u>Lloyd's Discrimination Claim Under 42 U.S.C. Section 2000a is Dismissed.</u>

Section 2000a prohibits discrimination in places of public accommodation "on the ground of race." 42 U.S.C. § 2000a. *Argentina v. Gillette*, 2018 U.S. Dist. LEXIS 14469, *7-8 (E.D. Pa. Jan. 30, 2018). Like her section 1981 claim above, Lloyd's section 2000a public accommodation claim is based on the defendants' actions of not moving the Osmose employees to a different hotel room, and since they did not move the Osmose employees, Lloyd complains that she was discriminated against for being a Caucasian female. (ECF #74, at 55-56.) For the same reasons set out in the previous section, Lloyd's section 2000a claim is dismissed.

8. <u>Lloyd's Public Accommodations Claim Under the Pennsylvania Human Relations Act is Dismissed.</u>

Lloyd argues that defendants violated the Pennsylvania Human Relations Act for "refusing [her] reasonable accommodation request, having ADA violations in regards to parking and entrance accessibility, retaliation against [her] and forcing her to leave with the threat of

unlawful arrest, along with harassing Lloyd over the use of her service dogs." (ECF #74, at 58.) Under the PHRA, a party must first bring a claim to the Pennsylvania Human Rights Commission within 180 days of the alleged act. *See Bethea v. Michael's Family Rest & Diner*, 2001 U.S. Dist. LEXIS 8665, *11-12 (E.D. Pa. June 26, 2001). Lloyd failed this administrative requirement, therefore, her PHRA claim is dismissed without prejudice.

9. <u>Lloyd's Pennsylvania Innkeeper Act Claim is Dismissed.</u>

Lloyd claims defendants violated the Pennsylvania Innkeepers Act of 1996 because they forced her to leave under threat of arrest despite her "legitimate complaints," without right to do so, and they cannot say that she was disorderly or brought something onto the property that may be dangerous. (ECF #74, at 29, 57.) 48 Pa.C.S. section 1311 provides civil liability if a hotelkeeper denies accommodations, facilities or privileges "based upon the factors under section 3 of the [PHRA].' 42 Pa.C.S. § 1311(b)(2). Section three of the PHRA prohibits discrimination of a person obtaining any public accommodation. 43 P.S. § 953. Lloyd's claim that the defendants forced her to leave under threat of arrest is not a viable claim under the Pennsylvania Innkeeper Act. She does not argue, nor can she, that she was forced to leave the hotel because of her race, gender, disability, or otherwise. She was asked to leave after her complaints and disputes with other hotel guests continued and escalated to the point where the hotel believed that it was in their best interest, along with everyone else's best interest, that Lloyd left the hotel. Accordingly, Lloyd's Pennsylvania Innkeeper's Act is dismissed.

10. <u>Sanctions</u>

Defendants ask that the Court impose sanctions and award attorney's fees for having to defend Lloyd's frivolous filings. District Courts have substantial discretion in imposing sanctions, and they are not appropriate at this time. While Lloyd has submitted numerous filings

that may not have any merit, she does has a valid claim that needs adjudication. As the case proceeds, the Court will keep defendants' request for sanctions and fees in mind, and if it later becomes appropriate based upon filings or otherwise, the Court may impose sanctions at that time.

IV. **Conclusion**

For the reasons set out above, Lloyd may now file a Second Amended Complaint under Title III of the ADA against the Hilton defendants. Osmose's Motion to Dismiss is granted, and the non-parties' Motion to Dismiss is granted.

---

[1] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim satisfies the plausibility standard when the facts alleged "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Burtch v. Millberg Factors, Inc.*, 662 F.3d 212, 220-21 (3d Cir. 2011) (citing *Iqbal*, 556 U.S. at 678). While the plausibility standard is not "akin to a 'probability requirement,'" there nevertheless must be more than a "sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

The Court of Appeals requires us to apply a three-step analysis under a 12(b)(6) motion: (1) "it must 'tak[e] note of the elements [the] plaintiff must plead to state a claim;'" (2) "it should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth;'" and, (3) "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Connelly v. Lane Construction Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 675, 679); *see also Burtch*, 662 F.3d at 221; *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011); *Santiago v. Warminster Township*, 629 F.3d 121, 130 (3d Cir. 2010).

Our analysis changes when a party represents itself *pro se*. The Supreme Court requires us to "liberally construe" a *pro se* document. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A *pro se* complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972). Our Court of Appeals instructs us to permit a curative amendment if a complaint is vulnerable to dismissal for failure to state a claim, unless an amendment would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002).